RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DAVID BRYON BABCOCK,

*Plaintiff-Appellant*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee*.

No. 19-1687

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:18-cv-00255—Gordon J. Quist, District Judge.

Argued:  March 10, 2020

Decided and Filed:  May 11, 2020

Before:  COLE, Chief Judge; BOGGS and SUTTON, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Nicholas A. Kipa, BAHRIE LAW, PLLC, Lansing, Michigan, for Appellant.
Sushma Soni, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee.  **ON BRIEF:**  Nicholas A. Kipa, BAHRIE LAW, PLLC, Lansing, Michigan, for
Appellant.  Sushma Soni, Alisa B. Klein, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee.

─────────────────

## OPINION

─────────────────

COLE, Chief Judge.  This case asks us to decide whether a federal civil-service pension
based on work as a National Guard dual-status technician qualifies as "a payment based wholly

on service as a member of a uniformed service" under the Social Security Act.  We agree with the district court that it does not.

**I.**

Plaintiff-Appellant David Babcock joined the Michigan National Guard in 1970 as an enlisted soldier.  After serving for three-and-a-half years, Babcock went to flight school, received his pilot license and, in 1975, became employed as a National Guard dual-status technician. He worked in that position for over 33 years.

By statute, a National Guard dual-status technician "is a Federal civilian employee" who "is assigned to a civilian position as a technician" while maintaining membership in the National Guard.  10 U.S.C. § 10216(a)(1); *see also* 32 U.S.C. § 709(e) (providing that National Guard dual-status technicians are employees of both the United States and either the Department of the Army or the Department of the Air Force).  These technicians are responsible for "the organizing, administering, instructing, or training of the National Guard" or "the maintenance and repair of supplies issued to the National Guard or the armed forces."  32 U.S.C. § 709(a)(1)–(2); *accord* 10 U.S.C. § 10216(a)(1)(C).  Babcock, for his part, served in various roles as a test pilot and pilot instructor for the Michigan National Guard.  Additionally, as is required of all dual-status technicians, Babcock held the appropriate military grade for his position, wore a uniform that displayed his rank and unit insignia while working, and attended weekend drills.  *See* 32 U.S.C. § 709(b); *see also id.* § 502(a) (requiring National Guard members to complete certain drills and training).  Dual-status technicians may also be required to support operations or missions undertaken by their units.  *See* 32 U.S.C. § 709(a)(3)(A).  Indeed, for a period between 2004 and 2005, Babcock was deployed to Iraq on active duty.

Babcock received military pay for his active-duty service in Iraq and his inactive-duty training, including weekend drills.  *See generally* 37 U.S.C. §§ 204(a), 206 (military pay provisions).  But otherwise, he received civil pay and participated in the Civil Service Retirement System ("CSRS").  *See generally* 5 U.S.C. §§ 5301 *et seq.* (describing the federal civil pay system); *id.* § 8332(b)(6) (providing that employment as a dual-status technician is eligible for the CSRS).  In accordance with the Social Security Act, Babcock paid Social Security taxes on

the wages for his active-duty service in Iraq and for his inactive-duty training from 1988 onwards. *See* 42 U.S.C. § 410(l)(1). He did not pay Social Security taxes on his wages for inactive-duty training before 1988 or on his civil-service wages. *See id.*; *see also id.* § 410(a)(5).

Babcock retired from his position as a dual-status technician on January 31, 2009. At the time, he was classified as a grade 13, step 10, Aircraft Flight Instructor. Upon his retirement, he began receiving monthly CSRS payments from the Office of Personnel Management ("OPM"). He also began receiving separate military retirement pay from the Defense Finance and Accounting Service ("DFAS"). For several years after his retirement from his role as a dual-status technician, Babcock flew medical-evacuation helicopters for hospitals. His income from this private-sector employment was subject to Social Security taxes. Babcock fully retired in 2014.

On September 30, 2014, Babcock applied for Social Security retirement benefits. On his application, he confirmed that he was receiving monthly CSRS payments. The Social Security Administration ("SSA") granted Babcock's application but reduced his benefits under the Windfall Elimination Provision of the Social Security Act ("WEP") because of his CSRS pension. *See* 42 U.S.C. § 415(a)(7)(A). Babcock asked the SSA to reconsider its decision, citing an exception to the WEP for payments "based wholly on service as a member of a uniformed service." *See id.* § 415(a)(7)(A)(III). Babcock argued that this uniformed-services exception applied to his CSRS pension based on his work as a dual-status technician.

At the time, the only federal court of appeals to have addressed the applicability of the uniformed-services exception to a dual-status technician's CSRS pension was the Eighth Circuit. According to the Eighth Circuit, the text of the exception imposes only the "limited" requirement that "service be as a member of the uniformed service." *Petersen v. Astrue*, 633 F.3d 633, 637 (8th Cir. 2011). The Eighth Circuit held that service as a dual-status technician meets this requirement, and therefore, the uniformed-services exception unambiguously applies to a pension based on service as a dual-status technician. *Id.* at 637–38.

In response to the *Petersen* decision, the SSA issued Acquiescence Ruling ("AR") 12-1(8) to explain how it would apply the WEP and the uniformed-services exception for

claimants residing within the Eighth Circuit. *See* 77 Fed. Reg. 51,842 (Aug. 27, 2012). Under AR 12-1(8), the WEP does not apply when a claimant receives a federal pension based wholly on employment as a dual-status technician for the National Guard; the claimant resides in a state within the Eighth Circuit; and the agency makes a benefits determination after February 3, 2011, the date of the *Petersen* decision. *See id.* at 51,842–43. For claimants residing outside of the Eighth Circuit, however, the WEP would continue to apply if the claimant receives a federal pension based on employment as a dual-status technician. *See id.* Accordingly, because Babcock was not a resident of the Eighth Circuit, the SSA refused to alter its initial determination that the WEP applied to Babcock's Social Security retirement benefits. An administrative law judge ("ALJ") upheld the SSA's determination, and the Appeals Council affirmed the ALJ's decision.

Babcock then sought judicial review by filing suit against the Commissioner of Social Security in the United States District Court for the Western District of Michigan. While his case was pending before the district court, the Eleventh Circuit decided *Martin v. Social Security Administration, Commissioner*, in which it rejected the Eighth Circuit's analysis and held that the uniformed-services exception does not apply to dual-status technicians. 903 F.3d 1154, 1168 (11th Cir. 2018) (per curiam). Focusing on the words "wholly" and "as" in the text of the statute, the Eleventh Circuit concluded that "even if dual status technician employment is *essentially* military, it is not subject to the uniformed services exception if it is not *wholly* military in nature." *Id.* at 1166 (emphasis in original). Finding it "difficult to conclude that a dual status technician wholly performs that role as a member of the National Guard," the Eleventh Circuit decided that the Commissioner had the more persuasive reading of the statute. *See id.* at 1166, 1168.

Faced with both the *Petersen* and *Martin* decisions, the district court concluded that the Eleventh Circuit's analysis in *Martin* was "more persuasive than the *Petersen* court's analysis" and was "based on the correct application of the language of the exception," and thus, the uniformed-services exception was inapplicable (and the WEP applied) in Babcock's case. *Babcock v. Comm'r of Soc. Sec.*, 2019 WL 2205712, at *2 (W.D. Mich. May 22, 2019). The district court also rejected Babcock's claim that his rights to due process and equal protection

were violated because the WEP applied differently to claimants within the Eighth Circuit. *Id.* at *3. The district court accordingly entered judgment in favor of the Commissioner, and this timely appeal followed.

**II.**

We review the district court's decision de novo. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). Because our review involves interpreting a statute that the Commissioner has authority to administer, 42 U.S.C. § 405(a), we start by asking "whether Congress has directly spoken to the precise question at issue." *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If we can ascertain "the unambiguously expressed intent of Congress," the inquiry ends, and we must give effect to Congress's unambiguous construction of the statute. *Id.* at 842–43; *accord Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018). Only if the statute is silent or ambiguous on the particular issue do we turn to the question of whether to defer to the Commissioner's interpretation of the statute. *See Chevron*, 467 U.S. at 843; *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1629–30 (2018).

In deciding whether Congress has spoken directly to the issue at hand, we do not confine ourselves "to examining a particular statutory provision in isolation." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). Rather, we must read the words of the statutory provision "in their context and with a view to their place in the overall statutory scheme." *Id.* at 133 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008) ("Plain meaning is examined by looking at the language and design of the statute as a whole." (quoting *United States v. Wagner*, 382 F.3d 598, 607 (6th Cir. 2004))). Additionally, we are cognizant that "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Brown & Williamson*, 529 U.S. at 133. Employing the available tools of statutory interpretation, we conclude that the uniformed-services exception does not apply to a civil-service pension based on employment as a dual-status technician.

**A.**

The Social Security Act provides individuals with a retirement benefit based on a percentage of their pre-retirement income from "covered" employment—i.e., income that was subject to Social Security taxes. *See generally* 42 U.S.C. § 415 (describing the calculation of benefits). Under the Act's progressive scheme, retirement benefits are not calculated as a flat percentage of pre-retirement income but rather adjusted so that individuals with lower average earnings over their working lives receive a greater percentage of their average earnings than those with higher average earnings. *See id.* § 415(a)(1)(A). In other words, lower-income workers receive a greater return on their Social Security contributions than higher-income workers. *See id.*

Not all employment is covered under the Act. *See id.* § 410(a). For example, the Act does not cover federal civilian employment for those hired before 1984 and participating in the CSRS. *Id.* § 410(a)(5). The Act also does not cover certain types of employment in the military over certain periods. Specifically, while "active duty" service after 1956 is covered, as is "inactive duty training" (e.g., weekend drills) after 1987, inactive duty training between 1957 and 1987 is not covered. *See id.* § 410(l)(1).

Income from "noncovered" employment is exempt from Social Security taxes and not included in calculating the amount of an individual's Social Security benefits. *See id.* § 415(b). Many noncovered positions nonetheless have a separate annuity or pension plan for workers. *See, e.g.*, 5 U.S.C. §§ 8331 *et seq.* (providing for the CSRS). Accordingly, individuals who have been in both covered and noncovered employment may end up receiving both Social Security retirement benefits and a separate annuity or pension. And because only income from covered employment is used to calculate Social Security benefits, those individuals with both covered and noncovered employment also receive a higher return on their Social Security contributions than those with only covered employment. *See* 42 U.S.C. §§ 415(a)(1)(A), 415(b). In other words, individuals with both covered and noncovered employment tend to have their Social Security benefits calculated as if they were long-term low-wage earners, and thus benefit from the Act's progressive formula.

To address this windfall effect, Congress amended the Social Security Act in 1983 to add a Windfall Elimination Provision, or WEP.  Pub. L. No. 98-21, § 113(a), 97 Stat. 65 (1983); *see also* H.R. Rep. No. 98-25, pt. 1, at 21–22 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 239–40. The WEP modifies the standard benefits formula for a recipient who is also entitled to "a monthly periodic payment" that "is based in whole or in part upon his or her earnings" for noncovered employment.  42 U.S.C. § 415(a)(7)(A); *see also id.* § 415(a)(7)(B) (detailing the modified formula).  In short, the WEP is targeted at those individuals who gain an unintended advantage by receiving a separate pension or annuity based on noncovered work while simultaneously having relatively low earnings from covered work.

**B.**

That brings us to the uniformed-services exception at issue here, which Congress added in 1994.  Pub. L. No. 103-296, § 308(b), 108 Stat. 1464 (1994).  Under this exception, "a payment based wholly on service as a member of a uniformed service" does not trigger application of the WEP.  42 U.S.C. § 415(a)(7)(A)(III).  The statute defines a "member of a uniformed service" as "any person appointed, enlisted, or inducted in a component of the Army, Navy, Air Force, Marine Corps, or Coast Guard," including a "reserve component" such as the National Guard.  *Id.* § 410(m); *see also* 38 U.S.C. § 101(27).  We understand "service" here to refer to work.

Aside from the terms whose meaning arises from the statute, we construe statutory terms in accordance with their plain and ordinary meaning.  *See, e.g.*, *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013); *Sunrise Coop., Inc. v. U.S. Dep't of Agric.*, 891 F.3d 652, 657 (6th Cir. 2018).  In this context, the word "wholly" plainly means "to the full or entire extent" or "to the exclusion of other things."  *Martin*, 903 F.3d at 1163 (quoting *Wholly*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2612 (1961)); *accord Kientz v. Comm'r, SSA*, 954 F.3d 1277, 1282 (10th Cir. 2020) (defining *wholly* to mean "'entirely' or 'exclusively'" (quoting *Wholly*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1463 (1981))).  Additionally, the word "as" in this context "limit[s] the uniformed services exception only to payments for work performed in one's capacity or role as a member of the uniformed services." *Martin*, 903 F.3d at 1164 (citing *As*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra*, at 125); *see also*

*Kientz*, 954 F.3d at 1282 (giving the word "as" "the ordinary meaning of 'in the role, capacity, or function of'" (quoting *As*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, *supra*, at 76)). Thus, the uniformed-services exception does not apply simply because an individual was a member of a uniformed service while working in noncovered employment. Rather, by its plain text, the uniformed-services exception is cabined to payments that are based exclusively on employment in the capacity or role of a uniformed-services member.

Babcock's CSRS pension is not such a payment. As its name suggests, the CSRS is for those employed "in the civilian service of the Government." 5 U.S.C. § 8332(b). Individuals covered under the CSRS may receive credit for periods of military service, but service in the military by itself, without civilian employment, does not make an individual eligible to participate in the CSRS. *See id.* § 8332(c), (j); *see also Vidal v. Office of Pers. Mgmt.*, 267 F. App'x 946, 948 (Fed. Cir. 2008) (per curiam) ("[M]ilitary service does not automatically count towards eligibility for benefits in the civil service system."). The only reason dual-status technicians like Babcock may participate in the CSRS, and receive a CSRS pension, is that they are "Federal civilian employee[s]" who are "assigned to a civilian position." 10 U.S.C. § 10216(a)(1)(C); *see also* 5 U.S.C. § 8332(b)(6) (providing that employment as a dual-status technician is civilian service for purposes of the CSRS); *N.J. Air Nat. Guard v. FLRA*, 677 F.2d 276, 279 n.2 (3d Cir. 1982) (noting that one of the primary reasons Congress created the position of dual-status technician was so that National Guard technicians would be considered federal civilian employees and eligible for civil-service retirement benefits). Therefore, by its very nature, a dual-status technician's CSRS pension is not a payment based exclusively on employment in the capacity or role of a uniformed-services member.

The broader statutory context supports the conclusion that the uniformed-services exception does not encompass the CSRS pension of a dual-status technician. Within the Social Security Act, the uniformed-services exception operates as a qualification of the WEP, which broadly applies when a claimant separately receives a pension based on earnings from noncovered employment. *See* 42 U.S.C. § 415(a)(7)(A). As an exception to the general rule, the uniformed-services exception should be construed narrowly. *See Comm'r v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified

by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."); *accord M.L. Johnson Family Props., LLC v. Bernhardt*, 924 F.3d 842, 854 (6th Cir. 2019). The uniformed-services exception should be construed narrowly with respect to a CSRS pension in particular because the various provisions of the Social Security Act, taken together, make plain that the WEP is meant to apply to former federal employees receiving a CSRS pension. *See* 42 U.S.C. §§ 410(a)(5), 415(a)(7); *see also, e.g.*, *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000) ("The reason behind the WEP was that an individual who had been employed as a federal employee with pension benefits and also was entitled to Social Security retirement benefits would receive a windfall because he [or she] would be eligible for both Social Security and federal civil service pension payments."). Thus, the broader statutory context and the place of the uniformed-services exception in the overall statutory scheme support our conclusion that the plain text of the exception does not encompass a dual-status technician's CSRS pension.

Finally, we note that, in addition to his CSRS pension from the OPM, Babcock receives separate military retirement pay from the DFAS based on his work as a dual-status technician. There is no dispute that Babcock's military pension falls within the ambit of the uniformed-services exception. That Babcock receives a separate military pension to which the uniformed-services exception applies only bolsters the conclusion that his CSRS pension does not qualify for the uniformed-services exception.

**C.**

Babcock resists the conclusion that his CSRS pension falls outside the scope of the uniformed-services exception. He argues his CSRS pension is based entirely on his work as a dual-status technician, and this work is wholly indistinguishable from military employment because he had to maintain membership in the National Guard, hold the appropriate military grade for his position, wear a military uniform on a daily basis, and be prepared to be deployed on active duty. He argues, moreover, that his "status" as a civilian employee is irrelevant under the plain language of the statute.

We do not discount the fact that the job requirements of a dual-status technician overlap with those of other National Guard members—or that, from the perspective of the technician, the work of a dual-status technician may be materially similar to military employment. The plain language of the uniformed-services exception, however, instructs us to look at "a payment" and ask whether that payment is based exclusively on employment in the capacity or role of a member of a uniformed service. *See* 42 U.S.C. § 415(a)(7)(A)(III). As we have explained, a CSRS pension must be based at least partly on some employment "in the civilian service of the Government," *see* 5 U.S.C. § 8332(b), and therefore, Babcock's CSRS pension is not a payment based exclusively on employment in the capacity or role of a uniformed-services member.

Additionally, though Babcock contends it is irrelevant, his designation as a "civilian" employee of the United States, "assigned to a civilian position as a technician," *see* 10 U.S.C. § 10216(a)(1)(C), is meaningful—and more than a mere "status"—in the context of Social Security retirement benefits. Because Babcock was a federal civilian employee, he was subject to the same General Schedule ("GS") pay scale as other federal civilian employees—ultimately retiring as a grade 13, step 10, Aircraft Flight Instructor. *See generally* 5 U.S.C. §§ 5331 *et seq.* (describing the GS pay rates and system). As a federal civilian employee hired before 1984, Babcock did not have Social Security taxes deducted from his GS-based civilian pay, unlike uniformed-services members in covered employment. *See* 42 U.S.C. §§ 410(a)(5), 410(l)(1). Most importantly, Babcock was eligible to participate in the CSRS, which non-technician members of the uniformed services (without some other civilian employment) are unable to do. *See* 5 U.S.C. § 8332(b)(6). These differences distinguish Babcock's service as a dual-status technician from that of other National Guard members and indicate that his dual-status technician employment is not wholly "service as a member of a uniformed service" under the uniformed-services exception. *See* 42 U.S.C. § 415(a)(7)(A)(III); *see also Martin*, 903 F.3d at 1166 ("[E]ven if dual status technician employment is *essentially* military, it is not subject to the uniformed services exception if it is not *wholly* military in nature." (emphasis in original)).

Babcock argues that our precedents involving the *Feres* doctrine establish that employment as a dual-status technician is indeed military employment. *See Feres v. United States*, 340 U.S. 135 (1950). Several of our cases applying *Feres* hold that the position of a

National Guard technician is "irreducibly military in nature." *Fisher v. Peters*, 249 F.3d 433, 443 (6th Cir. 2001); *accord Leistiko v. Stone*, 134 F.3d 817, 820–21 (6th Cir. 1998) (per curiam) (quoting *Leistiko v. Sec'y of the Army*, 922 F. Supp. 66, 75 (N.D. Ohio 1996)). But the *Feres* doctrine is about whether military personnel can sue their colleagues or the government for injuries resulting from military service. *See Feres*, 340 U.S. at 144–46; *see also Chappell v. Wallace*, 462 U.S. 296, 299 (1983) (applying *Feres* in the *Bivens* context); *Fisher*, 249 F.3d at 443 (extending *Feres* to Title VII claims). That the work of a dual-status technician is "irreducibly military" for purposes of suing other military personnel or the government does not resolve whether the role is wholly service as a member of a uniformed service for purposes of calculating Social Security retirement benefits, which focuses critically on the types and sources of a claimant's earnings. *See* 42 U.S.C. §§ 410, 415. As we have described, in terms of the types and sources of earnings, there are meaningful differences between dual-status technicians and other members of the uniformed services. Therefore, our cases in the *Feres* context do not help Babcock here or undermine our conclusion that his CSRS pension falls outside the scope of the uniformed-services exception.

## D.

Finally, we turn to Babcock's constitutional claims. Babcock asserts that his rights to due process and equal protection were violated because he was treated differently than a similarly situated resident of the Eighth Circuit. But "[n]o court has ever held that the mere existence of a circuit split on an issue of statutory interpretation violates due process or equal protection . . . ." *Habibi v. Holder*, 673 F.3d 1082, 1088 (9th Cir. 2011); *see also Roberts v. Holder*, 745 F.3d 928, 933 (8th Cir. 2014) ("Disagreements among the courts of appeal, or between an agency and one or more of the courts of appeal, will not by itself [*sic*] create an equal protection violation."). Babcock cannot sustain a due-process or equal-protection claim solely on the basis of a circuit split.

## III.

We hold that the uniformed-services exception does not apply to Babcock's CSRS pension. We accordingly affirm.