**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1961
_____

FLOYD DOUGLAS NEWTON,

Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-18-cv-00751)
District Judge: Honorable Renee M. Bumb

_____

Submitted under Third Circuit LAR 34.1(a)
On December 10, 2019

Before:  RESTREPO, ROTH and FISHER, <u>Circuit Judges</u>

(Opinion filed: December 22, 2020)

Roger D. Moore
Rehm, Bennett, Moore, Rehm & Ockander
9202 West Dodge Road
Suite 203
Omaha, NE 68116

*Counsel for Appellant*


Eda Giusti
Social Security Administration
Office of General Counsel SSA/OGC/Region III
300 Spring Garden Street
6th Floor
P.O. Box 41777
Philadelphia, PA 19123

Alisa B. Klein
Sushma Soni
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

*Counsel for Appellee*

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

## I.

This case requires us to determine whether a National Guard dual status technician's pension is "based wholly on service as a member of a uniformed service" under 42 U.S.C. § 415(a)(7)(A). We will affirm the order of the District Court, holding that it is not.

## II.

A dual status military technician is a "Federal civilian employee" who "is assigned to a civilian position as a technician . . . [supporting] the Selected Reserve or the armed forces."[1] Dual status technicians, although civilians, must maintain National Guard membership, hold a particular military grade, and wear the appropriate military uniform while performing civilian technician duties.[2] They must also meet certain military requirements, such as assembling periodically for "drill and instruction, including indoor target practice" and participating in "training at encampments, maneuvers, outdoor target practice, or other exercises."[3]

---

[1] 10 U.S.C. § 10216(a)(1)(C).

[2] 32 U.S.C. § 709(b)(2)–(4).

[3] *Id.* § 502(a). A dual status technician fulfills these military service requirements during periods when he is not working as a civilian technician. *See generally Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 291 (5th Cir. 2008) (distinguishing a dual status technician's "full-time civilian position with the [National] Guard, a Monday through Friday job . . . as a 'federal technician'" from his "traditional National Guard position").

Plaintiff Floyd Douglas Newton worked as a National Guard dual status technician from 1980 until 2013. Before and during his time as a National Guard dual status technician, Newton also served as a New Jersey Army National Guard member, a military position involving weekend drills and annual field training for which he received separate military pay. In July 2013, Newton retired from both his National Guard and dual status technician service. He subsequently began receiving retirement benefits, which consisted of a pension paid by the Defense Finance and Accounting Service for his military service in the National Guard and an annuity paid by the United States Office of Personnel Management (OPM) for his service as a dual status technician.

In June 2015, Newton applied for Social Security benefits. The Social Security Administration (SSA) notified Newton that he qualified for retirement benefits but that the benefits were subject to a reduction under the Windfall Elimination Provision (WEP), which modifies the usual statutory formula to reduce Social Security benefits for those who receive a separate pension payment "based in whole or in part upon his or her earnings" for which the recipient did not pay Social Security tax.[4] The SSA explained that because Newton was receiving a civil service annuity, which constitutes a payment "based in whole or in part upon his or her earnings"[5] for work not covered by Social Security, the WEP applied.

Believing his civil service pension from his dual status employment triggered an exception to the WEP for uniformed

---

[4] 42 U.S.C. § 415(a)(7)(A).
[5] App. 58.

4

service, Newton requested reconsideration. But the Administrative Law Judge and, subsequently, the SSA Appeals Council, upheld the SSA's original determination. Newton sought district court review. Upholding the SSA's decision, the District Court for the District of New Jersey held that Newton's Social Security retirement benefits are subject to a reduction under the WEP and are not eligible for the uniformed services exception because his civil service pension is not "based wholly on service as a member of the uniformed service."[6] Newton now appeals that determination. Because—albeit on different grounds—we agree with the District Court's conclusion, we will affirm its order, holding that Newton is not subject to the uniformed service exception to the WEP.

III.[7]

Social Security benefits consist of a percentage of the recipient's cumulative earnings. Those with lower earnings receive a higher percentage, whereas those with higher earnings receive a lower percentage.[8] Covered earnings, those considered in determining a recipient's Social Security benefits, are earnings for which the recipient paid Social Security tax. But if a recipient also receives a pension payment "based in whole or in part upon his or her [uncovered]

---

[6] *Newton v. Comm'r of Soc. Sec.,* No. CV 18-751(RMB), 2019 WL 1417248, at *4 (D.N.J. Mar. 29, 2019).

[7] The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g); we have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's decision is de novo. *T Mobile N.E. LLC v. City of Wilmington*, 913 F.3d 311, 318 n.5 (3d Cir. 2019).

[8] 42 U.S.C. § 415(a)(1).

earnings"—that is, earnings for which he did not pay Social Security tax—the WEP applies.[9]  The SSA must then consider those uncovered earnings when calculating Social Security benefits.  By considering both covered and uncovered earnings, the WEP ensures that an individual like Newton, who receives a separate pension, will receive a smaller percentage of his covered earnings than he would receive if his uncovered earnings were not taken into consideration.  This prevents the double-dipping that would result if the recipient received the higher percentage of benefits and a separate pension.

But the WEP includes several exceptions.  The uniformed services exception, on which Newton relies, applies to pension payments that are "based wholly on service as a member of a uniformed service."[10]  The uniformed services exception ensures that pensions for uniformed service will not result in a reduction of Social Security retirement benefits even though they are based on uncovered earnings.

The narrow question before us is whether National Guard dual status technicians qualify for the uniformed services exception, that is, whether pensions for dual status technician service are based "wholly on service as a member of a uniformed service" under § 415(a)(7)(A).

Five Circuit Courts have addressed this precise question.  The Eighth Circuit has answered it in the affirmative, while the Sixth, Ninth, Tenth, and Eleventh Circuits have

---

[9] *Id.* § 415(a)(7)(A).
[10] *Id.*

6

answered it in the negative.[11]   The District Court agreed with the Eleventh Circuit and found that a pension from service as a dual status technician is not based wholly on service in a uniformed service.  Although we disagree with the District Court's reasoning, we will affirm its ultimate conclusion and hold that dual status military technicians are not covered by the uniformed services exception.

The Court of Appeals for the Eighth Circuit concluded in *Petersen v. Astrue* that a dual status technician's OPM pension is based "wholly on service" as a military technician.[12] The court found that the plaintiff's civil service pension qualified for the uniformed services exception because he was required to maintain membership in the National Guard and was obligated to wear his military uniform while conducting his work as a dual status technician.[13]  The Sixth, Ninth, Tenth, and Eleventh Circuits, by contrast, have all held that dual status technicians are not entitled to the uniformed services exception.[14]

---

[11] *See Petersen v. Astrue*, 633 F.3d 633 (8th Cir. 2011); *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154 (11th Cir. 2018); *Kientz v. Comm'r, SSA*, 954 F.3d 1277 (10th Cir. 2020); *Babcock v. Comm'r of Soc. Sec.,* 959 F.3d 210 (6th Cir. 2020); *Larson v. Saul*, No. 18-35985, 2020 WL 4187266 (9th Cir. July 21, 2020).
[12] 633 F.3d at 637.
[13] *Id.*
[14] *See Martin*, 903 F.3d 1154; *Kientz*, 954 F.3d 1277; *Babcock*, 959 F.3d 210; *Larson*, 2020 WL 4187266.

The District Court here adopted the Eleventh Circuit's reasoning.[15]  The District Court noted that while the Eighth Circuit failed to "address the use of the word 'wholly,' which has special meaning in this context," the Eleventh Circuit did address it.[16]  The District Court agreed with the Eleventh Circuit that "[b]y its plain meaning, 'wholly' limits the payments covered by the uniformed services exception" and that because dual status technicians do not "wholly perform[] that role as a member of the National Guard," they are not entitled to the uniformed services exception.[17]  Although we disagree with the District Court's reliance on the word "wholly," we agree with its conclusion.

IV.

When interpreting a statute, we begin by asking "whether Congress has directly spoken to the precise question at issue" in such a way that its intent is clear and unambiguous.[18]  Only if the relevant statute is silent or ambiguous regarding the question at issue do we consider deferring to the SSA's interpretation of the statute.  But "[w]here the language of the statute is clear . . . the text of the

---

[15] *Newton*, 2019 WL 1417248 at *4.

[16] *Id.*

[17] *Id.* (quoting *Martin*, 903 F.3d at 1166).

[18] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984).  It is well-settled that "[t]he first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'"  *Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002) (quoting *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001) (internal citations omitted)).

statute is the end of the matter."[19]  Here, the plain language of the uniformed services exception resolves for us that the exception does not apply to a civil service pension based on employment as a dual status technician.

In contrast to the District Court, we cannot rely on the meaning of the word "wholly."  In determining a word's meaning, we look to its context.[20]  This is especially true of modifying words, such as "wholly."  The uniformed service exception reads: "[Exempt from the WEP are] payment[s] based wholly on service as a member of a uniformed service."[21]  How we interpret this exception depends on whether we read "wholly" to modify the type of service— requiring the entire service to be uniformed service—or the pension payment itself—requiring the entire payment to be for uniformed service.  The District Court, relying on the Eleventh Circuit, assumed that "wholly" modified the nature of the *service* covered by the uniformed service exception.  But "wholly" does not designate the type of service.  We do not know whether, in order to be exempt from the WEP, the service that gives rise to the pension must be "uniformed service" in its *entirety* or if the service could have been *partially* "uniformed service."

---

[19] *Steele v. Blackman*, 236 F.3d 130, 133 (3d Cir. 2001).

[20] Thus, a word's placement in a sentence can determine its meaning.  A simple illustration is the difference in meaning between the word "only" in the sentences "Only Nancy wants salad" and "Nancy only wants salad."  In the first sentence, "only" means that Nancy and no other person wants salad; in the second, it means that Nancy wants salad and nothing else.

[21] 42 U.S.C. § 415(a)(7)(A).

9

Although the word "wholly," as it modifies "service," provides little assistance in discerning the plain meaning of the uniformed services exception, other textual indicia clearly establish that dual status technicians are excluded from its coverage. Whether statutory language is clear "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[22] The uniformed services exception is triggered by "payment[s] based wholly on service as a member of a uniformed service (as defined in [42 U.S.C. 410(m)])."[23] The term "service" in this context means employment,[24] and the ordinary meaning of the word "as" is "in the capacity of."[25] As the Eleventh Circuit explained, in this context, "'as' appears to limit the uniformed services exception only to payments for work performed in one's capacity or role as a member of the uniformed services."[26] Meanwhile, the Act defines "member of a uniformed service" for the purpose of the uniformed service exception as "any person appointed, enlisted, or inducted in" the Army National Guard.[27]

There is no evidence to suggest that Newton was appointed, enlisted, or inducted into the Army National Guard

---

[22] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

[23] 42 U.S.C. § 415(a)(7)(A).

[24] *See, e.g.*, 42 U.S.C. § 410(a) (defining covered "employment" as "any service performed" meeting specified criteria).

[25] *See, e.g., Webster's Third New International Dictionary* 125 (1993) (providing that "as" means, among other things, "in the character, role, function, capacity, condition, or sense of").

[26] *Martin*, 903 F.3d at 1164.

[27] 42 U.S.C. § 410(m); 38 U.S.C. § 101(27)(F).

for his dual status technician work. In the National Guard context, "appointed" refers to the appointment of officers in the state National Guard by the state governor.[28] But dual status technicians are appointed to their civilian positions under the civil service appointment authority.[29] And Congress has expressly stated that, "[f]or purposes of any provision of law, a military technician (dual status) is a Federal civilian employee."[30] Although Newton also served in the National Guard—service for which he indeed was appointed—he has always received two *separate* salaries and now receives two separate pensions for his service in the National Guard and for his work as a dual status technician. At most, Newton's civil service pension can be said to be based on service he provided while *also* serving in the National Guard, but not for "service *as* a member of a uniformed service."[31]

## V.

Newton's OPM civil service annuity based on his dual status technician work does not constitute a payment based "on service as a member of a uniformed service" and is therefore not covered by the uniformed service exception to the WEP.

---

[28] 10 U.S.C. § 12201 (appointment of reserve officers); 32 U.S.C. § 305–312 (appointment of National Guard officers).

[29] *See* 5 U.S.C. § 2105(a)(1)(F); 32 U.S.C. § 709(c).

[30] 10 U.S.C. § 10216(a)(1); *see also* 10 U.S.C. § 10216(a)(1)(C) (dual status technicians are "assigned to a civilian position as a technician"); 10 U.S.C. § 10216(a)(2) (dual status technicians "shall be authorized and accounted for as a separate category of civilian employees").

[31] 42 U.S.C. § 415(a)(7)(A) (emphasis added).

Accordingly, we will affirm the order of the District Court, holding that it was not so covered.