*Linza v. Saul*

United States Court of Appeals

For the Second Circuit

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

August Term 2019

Argued:  June 2, 2020

Decided: March 8, 2021

No. 19-2766

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

STEPHEN LINZA,

*Plaintiff-Appellee,*

*v.*

ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellant.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Appeal from the United States District Court
for the Western District of New York
No. 15-cv-567, Michael A. Telesca, *Judge.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Before:  SULLIVAN, PARK, and NARDINI, *Circuit Judges*.

Plaintiff-Appellee Stephen Linza, a retired "dual status technician" with the National Guard, appeals the Social Security Administration's calculation of his Social Security retirement benefits.  Linza argues that the civil service pension he received in connection with his employment as a dual status technician – a civilian position that requires concurrent National Guard membership – is not subject to reduction under the Social Security Act's Windfall Elimination Provision because the pension falls within an exception applicable to payments based wholly on work performed as a member of a uniformed service.  The district court (Telesca, *J.*) granted judgment on the pleadings to Linza, and the agency appealed.  Looking to the plain text of the statute and using traditional tools of statutory interpretation, we hold that a civil service pension based on federal civilian employment as a dual status technician does not fall within the uniformed service exception.  Accordingly, we **REVERSE** and **REMAND** so that the district court may enter a judgment consistent with this opinion.

REVERSED.

Andrew O. Miller, Webster Szanyi LLP, Buffalo, New York, *for Plaintiff-Appellee* Stephen Linza.

SUSHMA SONI, Attorney, Appellate Staff, Civil Division (James P. Kennedy, Jr., United States Attorney for the Western District of New York, Alisa B. Klein, Attorney, Appellate Staff, Civil Division, *on the brief*), U.S. Department of Justice, Washington, DC, *for Defendant-Appellant* United States of America.

RICHARD J. SULLIVAN, *Circuit Judge*:

This appeal concerns whether Plaintiff-Appellee Stephen Linza's federal civil service pension from his work as a National Guard "dual status technician"

2

constitutes a payment based wholly on work performed as a member of a uniformed service under the Social Security Act (the "Act"). The answer to that question determines whether Linza's Social Security retirement benefits will be reduced, since a provision of the Act lowers retirement benefits for a person (like Linza) who receives a monthly payment based – at least in part – on income that is not subject to Social Security taxes, unless the monthly payment is exclusively for work as a uniformed service member.

A dual status technician is "a Federal civilian employee" who is required to maintain membership in the National Guard while "assigned to a civilian position as a technician." 10 U.S.C. § 10216(a)(1); *see also* 32 U.S.C. § 709. Focusing on the position's military characteristics, the district court held that Linza's pension qualified as "a payment based wholly on service as a member of a uniformed service." 42 U.S.C. § 415(a)(7)(A)(III). The district court expressly rejected the view that a dual status technician plays a role with bifurcated civilian and military components, finding instead that Linza served only in one position – namely, as a member of the National Guard with special technical capabilities. Having so found, it then determined that all of Linza's work as a dual status technician

constituted work as a uniformed service member, which in turn meant that his pension was wholly based on such service.

Urging reversal, the government argues that the plain meaning of the provision at issue, along with its statutory context, makes clear that a dual status technician's federal civil service pension is not "based wholly on service as a member of a uniformed service." We agree with the government and reverse.

## I. BACKGROUND

### A. Statutory Scheme

The Social Security Act pays individuals a retirement benefit based on a percentage of their pre-retirement income from "covered" employment – *i.e.*, income that was subject to Social Security taxes ("covered income"). *See* 42 U.S.C. § 415 (describing the calculation of benefits). The Act uses a weighted formula to progressively distribute benefits based on how much covered income an individual has earned over her life. The lower the average covered income an individual has earned, the higher the percentage of her average earnings she will receive in Social Security benefits. *See id.* § 415(a)(1)(A). As a result, "lower-income workers receive a greater return on their Social Security contributions than higher-income workers." *Babcock v. Comm'r of Soc. Sec.*, 959 F.3d 210, 215 (6th Cir.

4

2020), *cert. granted*, *Babcock v. Saul*, 2021 WL 769691 (U.S. Mar. 1, 2021) (No. 20-480).

But some employment is not covered under the Act. *See* 42 U.S.C. § 410(a). For example, most federal civil service jobs for employees hired before 1984 are not covered. *See id.* § 410(a)(5). Noncovered income is exempt from Social Security taxes and not included in the calculation of Social Security benefits. *See id.* § 415(b). Because only the covered income is used to calculate Social Security benefits, workers with both covered and noncovered employment would tend to have their Social Security benefits calculated as if they had low lifetime earnings. *See Rudykoff v. Apfel*, 193 F.3d 579, 581 (2d Cir. 1999). Under the standard formula – that is, without any adjustments – workers whose careers span covered and noncovered employment would thus receive a windfall because of the progressively weighted formula, getting a higher return on their Social Security payments relative to workers with only covered employment.

Further, noncovered positions often provide non-Social Security retirement pay through pensions or annuity plans, like the pension provided under the Civil Service Retirement System ("CSRS") for noncovered civil service employees. Thus, under the standard formula, federal employees who receive a civil service pension for noncovered work and a favorably weighted Social Security benefit

could receive total retirement income that would "most likely greatly exceed that of a worker with similar earnings all under social security." *Id.* (internal quotation marks omitted) (quoting H.R. Rep. No. 98-25, at 22 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 240).

In 1983, Congress amended the Act to eliminate this unintended windfall by introducing the Windfall Elimination Provision ("WEP"). 42 U.S.C. § 415(a)(7). The WEP modifies the standard formula for a retiree who receives "a monthly periodic payment" that "is based in whole or in part upon his or her earnings" for noncovered employment. *Id*. § 415(a)(7)(A).

Congress amended the WEP in 1994, adding the "uniformed service exception" at issue here. *Id*. § 415(a)(7)(A)(III). Under this exception, "a payment based wholly on service as a member of a uniformed service" does not trigger application of the WEP. *Id.* Section 410(m) of the Act defines a "member of a uniformed service" as "any person appointed, enlisted, or inducted in a component of the Army, Navy, Air Force, Marine Corps, or Coast Guard," "including a reserve component" such as the Air National Guard. *Id.* § 410(m); *see also* 38 U.S.C. § 101(27)(G). By the time Congress passed the amendment, nearly all military pensions were covered and thus exempt from the WEP. *See* 42

U.S.C. §§ 415(a)(7)(B)(i), 410(*l*)(1).  Only military pensions based on inactive duty between 1956 and 1988 were subject to WEP reduction, and the uniform service exception conformed such pensions with other military retirement pay.

## B.  Facts

Linza joined the New York Army National Guard in 1968.  In 1977, he enlisted in New York's Air National Guard and worked as a dual status technician for the Air National Guard from 1977 until April 2008, when he retired.  As noted, a dual status technician is defined as a "Federal civilian employee" who "is assigned to a civilian position as a technician" and is required to be a member of the National Guard.  10 U.S.C. § 10216(a); *see also* 32 U.S.C. § 709(b)(2)–(4) (providing that dual status technicians must be members of the National Guard, hold a specified military grade, and wear the appropriate uniform).  A dual status technician's responsibilities include "the organizing, administering, instructing, or training of the National Guard," as well as "the maintenance and repair of supplies issued to the National Guard or the armed forces."  32 U.S.C. § 709(a)(1)–(2); *see also* 10 U.S.C. § 10216(a)(1)(C).  Linza worked as an aircraft mechanic and trainer.

As a member of the National Guard, Linza performed fifteen days of active duty a year, in addition to attending weekend drills in uniform once a month,

which was likewise considered active duty. Linza also went on active-duty missions overseas as needed. To go on these missions, Linza would use "leave time [or] vacation time" or other saved time. Joint App'x at 25; *see also* 5 U.S.C. § 6323 (military leave provisions for federal civilian employees). In addition, Linza was required to maintain physical standards, including by passing a physical fitness test and keeping a military shave and haircut.

For his active-duty service and inactive duty training, Linza received military pay, *see* 37 U.S.C. §§ 204(a)(2) & 206 (military pay provisions), and the parties do not dispute that all his active-duty employment was "covered" under the Social Security Act. Though his inactive duty employment was covered from 1988 to 2008, it was not covered from 1968 to 1988.

For his work as a dual status technician, Linza received civil service pay from the Office of Personnel Management. Those wages were noncovered and therefore not subject to Social Security taxes. *See* Appellant's Br. at 13 (explaining that at the time Linza "entered federal civil service, the term 'employment' for purposes of Social Security coverage excluded work performed by federal civilian employees, such as [Linza], who participated in a federal retirement system").

In retirement, Linza has received a military pension, which is based on his military pay for active and inactive duty, some of which was covered. Linza has also received a civil service annuity – which is separate from his military pension – under the Civil Service Retirement System, based on the noncovered civilian pay he received for his work as a dual status technician. Finally, Linza has received Social Security retirement benefits.

## C. Procedural History

Linza applied for Social Security benefits based on his years of covered military employment. The Social Security Administration (the "SSA") reduced Linza's benefits under the WEP due to his receipt of a monthly civil service retirement pension, which was based on his noncovered civil service. The SSA did not reduce his benefits as to his military pension, which was based at least partially on his noncovered military pay for inactive duty before 1977. The parties agree that the military pension falls within the uniformed service exception.

Linza challenged the SSA's application of the WEP to his civil service pension. He sought reconsideration, arguing that he was eligible for the uniformed service exception to the WEP. The SSA affirmed its decision. Linza requested a hearing before an Administrative Law Judge, who concluded the

9

agency properly applied the WEP. The Appeals Council denied review, rendering the decision final under 42 U.S.C. § 405(g).

Linza then sought review in the district court, which granted judgment on the pleadings to Linza, reversing the Commissioner's decision and remanding to the agency. At that time, the Eighth and Eleventh Circuits had reached different conclusions regarding whether a dual status technician's civilian pension fell within the uniform service exception. The Eighth Circuit in *Petersen v. Astrue*, 633 F.3d 633 (8th Cir. 2011), held that the exception applied, while the Eleventh Circuit in *Martin v. Social Security Administration, Commissioner*, 903 F.3d 1154 (11th Cir. 2018), held that it did not.

Adopting the Eighth Circuit's reasoning, the district court found the uniformed service exception to be "clear and unambiguous" in Linza's favor. Joint App'x at 80. Noting, among other things, that dual status technicians "apply[] [their] technical expertise for the service of, and at the direction of, the National Guard," the district court rejected the notion that Linza worked in a bifurcated capacity. *Id.* The district court instead determined that dual status technicians "perform their [technician] work as members of the National Guard" in one continuous role with special technical capabilities. *Id.* at 80–81. Concluding there

10

was "no dispute that [Linza's] position as a dual-status technician in the National Guard qualified him as a member of the 'Uniformed Service,'" the district court held that his pensions were "derived wholly from his 'Uniformed Service'" – which, in the court's view, encompassed both his work as a technician and his active and inactive duty assignments. *Id.* at 81.

In August 2019, the Social Security Commissioner filed a timely notice of appeal. Since then, the Third, Sixth, Ninth, and Tenth Circuits have joined the Eleventh Circuit in holding that a civil service pension payment based on work as a dual status technician does not trigger the uniformed services exception. *See Newton v. Comm'r Soc. Sec.*, 983 F.3d 643, 650 (3d Cir. 2020); *Larson v. Saul*, 967 F.3d 914, 926 (9th Cir. 2020), *petition for cert. filed*, 2020 WL 8571670 (U.S. Dec. 18, 2020) (No. 20-854); *Babcock*, 959 F.3d at 218;[1] *Kientz v. Comm'r, SSA*, 954 F.3d 1277, 1285–86 (10th Cir. 2020). We now do the same.

## II. STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision awarding judgment on the pleadings. *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 783 (2d Cir. 2019). When reviewing an agency's legal determination or interpretation of a statute that it is

---

[1] The Supreme Court recently granted certiorari in *Babcock* to consider the same issue now before this panel. *See* 2021 WL 769691 (U.S. Mar. 1, 2021) (No. 20-480).

authorized to administer, courts often accord some deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Generally, the amount of deference owed depends on whether the agency's interpretation carries the force of law. *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001).

In either case, however, courts first consider "whether Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43; *see also United States v. Am. Soc'y of Composers, Authors & Publishers*, 627 F.3d 64, 72 (2d Cir. 2010) ("When the language of a statute is unambiguous, judicial inquiry is complete." (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002)); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 509 (2d Cir. 2017) ("Although the *Chevron* and *Skidmore* deference standards differ in application, they are similar in one respect[:] we will defer to the agency's interpretation under [either] standard only when the statutory language at issue is ambiguous.").

"As in all statutory construction cases, we begin with the language of the statute." *Am. Soc'y of Composers*, 627 F.3d at 72 (quoting *Barhart v. Sigmon Coal Co.*,

534 U.S. 438, 450 (2002)). We first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (quoting *Barhart*, 534 U.S. at 450). In determining whether Congress has spoken directly on an issue, courts should not examine "a particular statutory provision in isolation," but rather should read the words in "context and with a view to their place in the overall statutory scheme" and "fit, if possible, all parts into an harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (internal quotation marks and citations omitted). Further, "the meaning of one statute may be affected by other[s]." *Id.* at 133. "In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision." *Comm'r v. Clark*, 489 U.S. 726, 739 (1989). Thus, as an exception to the general rule establishing the WEP reduction, the uniformed service exception should be construed narrowly.

## III. DISCUSSION

At issue is whether Linza's pension for his work as a dual status technician is "a payment based wholly on service as a member of a uniformed service." 42 U.S.C. § 415(a)(7)(A)(III). The SSA argues for reversal of the district court's

decision based on the statutory text and its context, emphasizing that the civilian aspects of the dual status technician position render implausible or contradictory the district court's conception of the position as merely a specialized form of the National Guard role. Linza, in contrast, urges us to affirm the district court and highlights the military aspects of the dual status technician's civil service position.

We agree with the SSA and reverse. Linza's civil service pension is not a payment based exclusively on work performed in the role of a uniformed service member. And as we reach this conclusion based on the plain meaning of the statute, we need not even reach considerations of the deference owed to the agency's interpretation.

We start with the text of the uniformed services exception: "a payment based wholly on service as a member of a uniformed service." *Id.* As the Supreme Court has explained, "the phrase 'based on' [ordinarily] indicates a but-for causal relationship." *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020) (quoting *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63 (2007)); *see also Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019). So, "[u]nder [the] most natural reading" of the statute, a payment is not based on service as a uniformed services member "unless [such

14

service] was a necessary condition of the" payment. *See Safeco Ins. Co.*, 551 U.S. at 63.

The exception further clarifies that not only must the payment be "based on" the individual's service as a member of a uniformed service, it must also be "based *wholly* on" such service. 42 U.S.C. § 415(a)(7)(A)(III) (emphasis added). The common meaning of "wholly" is "exclusively." *See Babcock*, 959 F.3d at 216 ("In this context, the word 'wholly' plainly means 'to the full or entire extent' or 'to the exclusion of other things.'" (citations omitted)); *Kientz*, 954 F.3d at 1282 ("We afford 'wholly' the ordinary meaning of 'entirely' or 'exclusively.'"); *see also Am Soc'y of Composers*, 627 F.3d at 72 (explaining that for terms not defined in a statute, "statutory words will be interpreted as taking their ordinary, contemporary, common meaning" (quoting *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994))). The uniformed services exception is therefore clear that it applies to payments for which work in a uniformed service is the *only* cause.

Linza's pension – undoubtedly a payment – most directly derives from earnings he made in the dual status technician job. To fall within the exception, then, the work he performed must have been conducted exclusively in the capacity of a member of the National Guard. *See Kientz*, 954 F.3d at 1283 (explaining that

15

"any pension payment that [p]laintiff receives based on work outside of his exclusive capacity as a National Guard member does not qualify for the uniformed services exception").

Here, although Linza worked for the National Guard, his employment as a dual status technician meant that he was "assigned to a civilian position." 10 U.S.C. § 10216(a)(1)(C); *see* 5 U.S.C. § 8332(b)(6) (including dual status technicians as those in the civilian service and eligible for the annuity). And, broadly speaking, it was Linza's designation to that civilian position that made him eligible for his pension, not his National Guard service. *See* 5 U.S.C. § 8332(b) (tying the civil service retirement annuity to employment "in the civilian service of the Government"); *id.* § 8332(j)(1) (listing only specific circumstances under which military service can be creditable toward the civilian service-based CSRS annuity); *id.* § 8331(13) (providing that creditable military service for the CSRS does not include "service in the National Guard except when ordered to active duty in the service of the United States or full-time National Guard duty" and certain requirements are met); *see also Perpich v. Dep't of Def.*, 496 U.S. 334, 345-–46 (1990) (conceiving of "active duty in the federal service" as distinct from being a "member[] of a separate State Guard unit").

Linza's civilian classification, which accompanies the dual status technician position, is a necessary condition to the pension at issue here. *See Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 85 (2d Cir. 2004) (recognizing that dual status technicians are employed by the federal government "in, at least nominally, a civilian capacity"); 10 U.S.C. § 10216(a)(1) (providing that a military dual status technician is a "civilian employee" for the purposes of "any . . . provision of law"). Consequently, the pension, although based in part on Linza's service with the National Guard – since the position required his membership in the National Guard – is not *wholly* based on such service. The payment thus falls outside the uniformed services exception.

This conclusion is supported by Congress's conception of the dual status technician position as distinct from National Guard membership. The process by which one becomes a dual status technician is separate from that by which a person becomes a "member of a uniformed service." The Act defines the latter as "any person appointed, enlisted, or inducted in" the Air National Guard (or other uniformed services branches). 42 U.S.C. § 410(m); *see* 38 U.S.C. § 101(27)(G). Those three methods have specific meanings, delineating membership in specific capacities – as an appointed officer, enlisted member, or inductee. *See* 10 U.S.C.

§ 12201; 32 U.S.C. §§ 305–12; *see generally Gianatasio v. Whyte*, 426 F.2d 908, 910 (2d Cir. 1970) (discussing induction as distinct from appointment or enlistment). Having enlisted in the National Guard, Linza became a member of a uniformed service under the Act's definition. But Linza was neither "appointed, enlisted, [n]or inducted" into his dual status technician position within the meaning of that provision. Rather, he came into his dual status technician role only through a civilian appointment process not covered by that definition.

Linza's service as a dual status technician therefore was not performed solely, or even primarily, as an enlisted service member. *Accord Roper v. Dep't of Army*, 832 F.2d 247, 248 (2d Cir. 1987) (noting that military departments are meant to include only civilian employees, not enlisted personnel). Indeed, we have previously acknowledged that dual status technicians work in different capacities with different duties. *See Overton*, 373 F.3d at 86, 92 (distinguishing between Overton's work week responsibilities performed "[i]n his civilian capacity as an aircraft electrician" and the training responsibilities that he performed "[i]n his military capacity as a member of the Guard"). Put differently, Linza could not become a dual status technician simply by gaining or using special technical skills during his enlistment in the National Guard; instead, he entered that job through

18

civilian appointment, above and beyond the enlistment requirements needed to become a National Guard member. *See* 5 U.S.C. § 2105(a)(1)(F). In light of the ordinary understanding of what it means to work "as" a particular employee, Appellant's Br. at 21 (acknowledging that "as" in this context means "in the capacity of" or "in one's role as"), Linza cannot claim to have worked solely "as" an enlisted member while employed as a dual status technician.

Although Linza insists that his technician position was inextricably linked to his membership in the National Guard, the fact remains that Congress defined dual status technicians as "Federal civilian employees" and assigned distinct civilian attributes to the position not usually attendant to service purely as a member of the National Guard. For starters, Linza's compensation as a dual status technician was subject to the federal civilian pay scale. He received that civilian pay for work performed generally during the work week, receiving separate military pay for his inactive duty drills, which took place on the weekends, and his annual training. *See N.Y. Council, Ass'n of Civilian Technicians v. Fed. Lab. Rels. Auth.*, 757 F.2d 502, 505 (2d Cir. 1985), *abrogated on other grounds by F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). Linza also received separate military pay when he was called to active duty, and indeed was required to take leave from

his federal civilian position when called to do so. In addition, as a federal civilian employee, Linza was subject to an assortment of employment protections and could join a union, receive workers' compensation, and earn compensatory time off. *See Overton*, 373 F.3d at 86 (noting that "[a]s a civilian employee of the federal government, Overton was entitled to certain medical and retirement benefits" and that "a collective bargaining agreement governed his civilian employment" as a dual status technician); *N.Y. Council*, 757 F.2d at 505 (noting that technicians can "be discharged only for 'cause'"). It therefore defies common sense to suggest that Linza's compensation was not even partly based on his work as a "Federal civilian employee." 10 U.S.C. § 10216(a). Neither the requirements for entitlement to Linza's civil service pension nor the characteristics of his dual status technician position support the reading that his monthly retirement payments were "based wholly on" his service as a member of a uniformed service and no other ground.

IV.   CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court and REMAND so that the district court may enter a judgment consistent with this opinion.