(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BABCOCK *v.* KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 20–480. Argued October 13, 2021—Decided January 13, 2022

This case concerns retirement benefits due under the Social Security Act for a retired "military technician (dual status)," 10 U. S. C. §10216, a civilian position formerly held by David Babcock. Like all dual-status technicians, Babcock was required to maintain membership in the National Guard. For his full-time job as a technician, which included work as a test pilot and pilot instructor, Babcock received civil-service pay and Civil Service Retirement System pension payments from the Office of Personnel Management. For his separate National Guard service, which included part-time drills, training exercises, and one active-duty deployment, Babcock received military pay and military pension payments from a different arm of the Federal Government, the Defense Finance and Accounting Service. Upon retirement, Babcock applied to the Social Security Administration for benefits. The agency granted Babcock benefits but applied a statutory "windfall elimination provision" and reduced the amount of benefits to reflect Babcock's receipt of civil-service pension payments for his work as a technician. Babcock sought reconsideration, arguing that the reduction should not apply because the pension payments at issue fell within a statutory exception for payments "based wholly on service as a member of a uniformed service." The agency denied reconsideration, and Babcock exhausted available avenues of agency review before filing suit in federal court. The District Court upheld the agency's decision, and the Sixth Circuit affirmed.

*Held*: Civil-service pension payments based on employment as a dual-status military technician are not payments based on "service as a member of a uniformed service" under 42 U. S. C. §415(a)(7)(A)(III).

Retirees receive Social Security benefits based on a progressive formula that awards a percentage of average past earnings. §415(a)(1)(A). The formula originally did not account for earnings from jobs exempt from Social Security taxes, many of which provide separate pensions. In response to this potential windfall, Congress modified the formula to reduce benefits when a retiree receives such a separate pension payment. But Congress left benefits unchanged if the pension payment was "based wholly on service as a member of a uniformed service." §415(a)(7)(A)(III). The National Guard of the United States is defined as a uniformed service, §410(m), so whether the uniformed-services exception applies depends on whether Babcock's technician work was service "as" a member of the National Guard.

It was not. In context, "as" is most naturally read to mean "[i]n the role, capacity, or function of." American Heritage Dictionary 106. And the statute defines the role, capacity, or function in which a technician serves as that of a civilian: "For purposes of this section and any other provision of law," a technician "is" a "civilian employee," "assigned to a civilian position" and "authorized and accounted for as" a "civilian." 10 U. S. C. §§10216(a)(1), (a)(1)(C), (a)(2). Technicians hired before 1984 like Babcock are members of the "civil service" entitled to pensions under Title 5 of the U. S. Code, which governs the pay and benefits of civil servants. See 5 U. S. C. §2101. Looking to the broader statutory context, technicians possess characteristically civilian rights to seek redress for employment discrimination and to receive workers' compensation, disability benefits, and compensatory time off for overtime work. These provisions demonstrate that Congress consistently distinguished technician employment from National Guard service.

That distinction holds true even though Babcock also served at other times in a different capacity as a member of the National Guard. His civil-service pension payments are not based on that service, for which he received separate military pension payments that do not trigger the windfall elimination provision. And a condition of employment, such as the requirement that a technician maintain Guard membership, is not the same as the capacity in which one serves. Babcock contends that the technician job's qualifications, duties, and dress code render it functionally indistinguishable from National Guard service, and that the Court should interpret "as" more loosely to capture payments for "service [in the likeness of or the same as] a member of a uniformed service." But the Court finds no reason to adopt a meaning of "as" other than the most natural one, particularly when Babcock's functional test is inconsistent with the statutory scheme. Determining whether Babcock's employment was service "as" a member of the National Guard does not turn on factors like whether he wore his uniform to work but rather on how Congress classified the position. Congress'

civilian classification of dual-status technicians for "bookkeeping" pur-
poses controls when it comes to pay and benefits.  Pp. 4–7.

959 F. 3d 210, affirmed.

BARRETT, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and THOMAS, BREYER, ALITO, SOTOMAYOR, KAGAN, and KAVANAUGH,
JJ., joined.  GORSUCH, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 20–480

## DAVID BRYON BABCOCK, PETITIONER *v.* KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[January 13, 2022]

JUSTICE BARRETT delivered the opinion of the Court.

The Social Security Act generally reduces the benefits of retirees who receive payments from separate pensions based on employment not subject to Social Security taxes. The reduction is not triggered, though, by payments "based wholly on service as a member of a uniformed service."  We must decide whether this exception applies to civil-service pension payments based on employment as a "dual-status military technician"—a federal civilian employee who provides technical or administrative assistance to the National Guard.  We hold that it does not.

## I

### A

Retirees receive Social Security benefits according to a statutory formula based on average past earnings.  42 U. S. C. §415(a)(1)(A).  The formula is progressive in that it awards lower earners a higher percentage of their earnings. (Think of it like an income tax that lets you keep more of your 1st dollar earned than your 10,000th.)  But the formula originally did not count earnings from jobs exempt

from Social Security taxes, so it calculated artificially low earnings for retirees who spent part of their careers in those jobs. As a result, those retirees received an artificially high percentage of their calculated earnings in Social Security benefits—plus, in many cases, payments from separate pensions to boot.

Congress responded to this "windfall" by modifying the formula to reduce benefits when a retiree receives such a separate pension payment. Social Security Amendments of 1983, §113(a), 97 Stat. 76–78, 42 U. S. C. §§415(a)(7)(A)–(B). But it exempted several categories of pension payments, including "a payment based wholly on service as a member of a uniformed service." Social Security Independence and Program Improvements Act of 1994, §308(b), 108 Stat. 1522–1523, 42 U. S. C. §415(a)(7)(A)(III). The upshot is that pensions based on uniformed service do not trigger a reduction in Social Security benefits.

This case concerns the application of the windfall elimination provision to a unique position in federal employment: the "military technician (dual status)." 10 U. S. C. §10216. As its name suggests, this rare bird has characteristics of two different statuses. On one hand, the dual-status technician is a "civilian employee" engaged in "organizing, administering, instructing," "training," or "maintenance and repair of supplies" to assist the National Guard. §10216(a)(1)(C); 32 U. S. C. §§709(a)(1)–(2). On the other, the technician "is required as a condition of that employment to maintain membership in the [National Guard]" and must wear a uniform while working. 10 U. S. C. §10216(a)(1)(B); 32 U. S. C. §§709(b)(2)–(4).

This dual role means that technicians perform work in two separate capacities that yield different forms of compensation. First, they work full time as technicians in a civilian capacity. For this work, they receive civil-service pay and, if hired before 1984, Civil Service Retirement Sys-

tem pension payments from the Office of Personnel Management. See 5 U. S. C. §§2101, 8332(b)(6); 42 U. S. C. §410(a)(6)(A) (1970 ed.); 26 U. S. C. §3121(b)(6)(A) (1970 ed.).[1] Second, they participate as National Guard members in part-time drills, training, and (sometimes) active-duty deployment. See 32 U. S. C. §§502(a), 709(g)(2). For this work, they receive military pay and pension payments from a different arm of the Federal Government, the Defense Finance and Accounting Service. See 37 U. S. C. §§204, 206; 10 U. S. C. §113.

## B

David Babcock worked as a dual-status technician from 1975 to 2009. In his technician capacity, he worked full time as a test pilot and pilot instructor supporting the Michigan Army National Guard. Like all dual-status technicians, Babcock also served in the National Guard himself. In that capacity, he participated in part-time training and weekend drills, and he deployed to Iraq on active duty for about a year. From 2009 to 2014, he worked for a private employer flying helicopters.

After retiring, Babcock applied to the Social Security Administration for benefits. The agency granted his application but determined that his civil-service pension payments, which he received for his work as a civilian technician, triggered the windfall elimination provision. So the agency applied the modified formula to reduce his Social Security benefits by about $100 per month. Babcock sought reconsideration, arguing that his pension payments fell within the uniformed-services exception and so should not trigger this reduction in benefits. The agency denied reconsideration, and an Administrative Law Judge and the agency's Appeals Council upheld the decision.

_____

[1] Technicians hired since 1984, like other federal civil servants hired after that point, do not receive a Civil Service Retirement System pension. See 42 U. S. C. §410(a)(5)(B)(i).

Babcock then sued in federal court.  The District Court upheld the agency's decision.  The Sixth Circuit affirmed, concluding that Babcock's civil-service pension payments were based on service in a civilian capacity and therefore did not fall within the uniformed-services exception.  *Babcock* v. *Commissioner of Social Security*, 959 F. 3d 210 (2020).  While most circuits to address the question have reached the same result, one has come out the other way.[2]  We granted certiorari to resolve the split.  592 U. S. ___ (2021).

II

Babcock argues that the agency and courts below erred in reducing his Social Security benefits based on his pension for technician employment.  The dispute is narrow: All agree that Babcock's separate military pension for his National Guard service does not trigger the windfall elimination provision.  And all agree that Civil Service Retirement System pensions generally do trigger that provision.  The only question is whether Babcock's civil-service pension for technician work avoids triggering the provision's reduction in benefits because it falls within the exception for "a payment based wholly on service as a member of a uniformed service."  42 U. S. C. §415(a)(7)(A)(III).  The answer depends on whether Babcock's technician work was service "as" a member of the National Guard.  See §410(m) (defining "member of a uniformed service" to include a member of a "reserve component" as defined in 38 U. S. C. §101(27), which includes the Army National Guard of the United States).[3]

————————
[2] Compare *Linza* v. *Saul*, 990 F. 3d 243 (CA2 2021); *Newton* v. *Commissioner Social Security*, 983 F. 3d 643 (CA3 2020); *Larson* v. *Saul*, 967 F. 3d 914 (CA9 2020); *Kientz* v. *Commissioner, SSA*, 954 F. 3d 1277 (CA10 2020); *Martin* v. *SSA, Comm'r*, 903 F. 3d 1154 (CA11 2018) (*per curiam*), with *Petersen* v. *Astrue*, 633 F. 3d 633 (CA8 2011).

[3] For the first time in this Court, the Government argues that Babcock's claim fails for the independent reason that the State National

It was not. In context, "as" is most naturally read to mean "[i]n the role, capacity, or function of." American Heritage Dictionary 106 (3d ed. 1992); see also 1 Oxford English Dictionary 674 (2d ed. 1989) ("[i]n the character, capacity, or *rôle* of"). And the role, capacity, or function in which a technician serves is that of a civilian, not a member of the National Guard. The statute defining the technician job makes that point broadly and repeatedly: "For purposes of this section and any other provision of law," a technician "is" a "civilian employee," "assigned to a civilian position" and "authorized and accounted for as" a "civilian." 10 U. S. C. §§10216(a)(1), (a)(1)(C), (a)(2).

This statute's plain meaning "becomes even more apparent when viewed in" the broader statutory context. *FCC* v. *AT&T Inc.*, 562 U. S. 397, 407 (2011). While working in a civilian capacity, technicians are not subject to the Uniform Code of Military Justice. See 10 U. S. C. §§802(a)(3)(A)(ii), 12403, 12405. They possess characteristically civilian rights to seek redress for employment discrimination and to earn workers' compensation, disability benefits, and compensatory time off for overtime work. See 32 U. S. C. §709(f)(5); 42 U. S. C. §2000e–16; 5 U. S. C. §§8101 *et seq.*, 8337(h), 8451; 32 U. S. C. §709(h). And, as particularly significant in the context of retirement benefits, technicians hired before 1984 are members of the "civil service" entitled to pensions under Title 5 of the U. S. Code, which governs the pay and benefits of civil servants. See 5 U. S. C. §2101. These provisions demonstrate that Congress consistently distinguished technician employment from National Guard

_____

Guard in which he served, as distinct from the National Guard of the United States, is not a "uniformed service" under the statute. We need not reach this question to decide the case and express no view of the Government's alternative argument, which was neither pressed nor passed upon below. See *Adarand Constructors, Inc.* v. *Mineta*, 534 U. S. 103, 110 (2001) (*per curiam*) ("'[T]his is a court of final review and not first view'").

service.

That distinction holds true even though Babcock also served at other times in a different capacity as a member of the National Guard. His civil-service pension payments are not based on that service, for which he received separate military pension payments that do not trigger the windfall elimination provision. Nor are we moved by Babcock's argument that the statutory requirement for technicians to maintain National Guard membership makes all of the work that they do count as Guard service. A condition of employment is not the same as the capacity in which one serves. If a private employer hired only moonlighting police officers to be security guards, one would not call that employment "service as a police officer." So too here: the fact that the Government hires only National Guardsmen to be technicians does not erase the distinction between the two jobs.

Babcock protests that the distinction is not meaningful. He argues that the word "as" may sometimes bear the looser meaning "in the likeness of" or "the same as," rather than "in the capacity of." Reply Brief 4–5. With this looser meaning of "as," the uniformed-services exception would apply to "a payment based wholly on service [in the likeness of or the same as] a member of a uniformed service." The technician job satisfies this functional test, Babcock says, because whatever its classification, the job's qualifications, duties, and dress code render it indistinguishable from National Guard service. According to Babcock, Congress' choice to designate the technician's work as "civilian" is irrelevant to the uniformed-services exception. Brief for Petitioner 3.

We are unpersuaded. To begin with, the only reason Babcock advances for choosing his functional interpretation of "as" is that Congress used the word "capacity" (or the arguably analogous "status") in other provisions and did not do so in the uniformed-services exception. See, *e.g.,* 32 U. S. C.

§101(19) ("status as a member"); 10 U. S. C. §723(a) ("employ[ment] in" a "capacity"). But these scattered provisions do not create the kind of "stark contrast" that might counsel adoption of a meaning other than the most natural one. Cf. *Astrue* v. *Ratliff,* 560 U. S. 586, 595 (2010). At most, they illustrate that Congress has employed several variations on the same theme to distinguish between service in different capacities.

More importantly, though, Babcock's functional test is inconsistent with the choices that Congress made in the statutory scheme. Determining whether Babcock's technician employment was service "as" a member of the National Guard does not turn on factors like whether he wore his uniform to work. It turns on how Congress classified the job—and as already discussed, Congress classified dual-status technicians as "civilian." Babcock dismisses that distinction as one drawn for purposes of "administrative bookkeeping," but bookkeeping matters when it comes to pay and benefits.

*          *          *

Babcock's civil-service pension payments fall outside the Social Security Act's uniformed-services exception because they are based on service in his civilian capacity. We therefore affirm the judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–480

_____

## DAVID BRYON BABCOCK, PETITIONER *v.* KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[January 13, 2022]

JUSTICE GORSUCH, dissenting.

As the only dissenter on this narrow question of statutory interpretation, I confess trepidation. Still, I cannot help but find compelling the arguments advanced by the petitioner before us and by the Eighth Circuit in *Petersen* v. *Astrue*, 633 F. 3d 633, 637–638 (2011).

Dual-status military technicians hold "a unique position in federal employment." *Ante,* at 2. Not only do they sometimes serve on active duty, as the petitioner did. *Babcock* v. *Commissioner of Social Security*, 959 F. 3d 210, 212 (CA6 2020). By statute, they spend the rest of their time working for the Guard—on matters ranging from training others to administration to equipment maintenance. 10 U. S. C. § 10216(a)(1)(C); 32 U. S. C. § 709(a). At all times, they must "maintain membership" in the National Guard and wear a Guard uniform while on the job. 10 U. S. C. § 10216(a)(1)(B); 32 U. S. C. § 709(b). The authority to discharge or discipline these individuals, too, rests with the Adjutant General. §§ 709(d), (f). Given these features of their employment, I would hold that dual-status technicians "serv[e] as" members of the National Guard in all the work they perform for this country day in and day out. 42 U. S. C. § 415(a)(7)(A)(III).

I appreciate the analogy to police officers moonlighting as

private security guards. *Ante,* at 6. But to my mind dual-status technicians are more like part-time police officers employed in their outside hours by the same police department to train recruits, administer the precinct office, and repair squad cars—all on the condition that they wear their police uniforms and maintain their status as officers. I suspect most reasonable officers in that situation would consider the totality of their work to constitute "service as . . . member[s]" of the police force. So too here I expect most Guardsmen who serve as "dual-status technicians"—who come to work every day for the Guard, in a Guard uniform, and subject to Guard discipline—would consider all of their work to represent "service as . . . member[s]" of the National Guard. I would honor that reasonable understanding and would not curtail servicemembers' Social Security benefits based primarily on implications extracted from other, separate "bookkeeping" statutes. *Ante,* at 7.