**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-1177**

———————

EVENS JULMICE,

        Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

        Respondent.

———————

On Petition for Review of an Order of the Board of Immigration Appeals.

———————

Argued: January 27, 2022                  Decided: March 23, 2022

———————

Before RICHARDSON, RUSHING, and HEYTENS, Circuit Judges.

———————

Petition granted; vacated and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Richardson and Judge Rushing joined.

———————

**ARGUED:** Jennifer Sheethel Varughese, ROTH JACKSON GIBBONS CONDLIN, PLC, McLean, Virginia, for Petitioner. Spencer Stephen Shucard, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian Boynton, Acting Assistant Attorney General, Keith I. McManus, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

TOBY HEYTENS, Circuit Judge:

A federal statute gives the Attorney General discretion to grant waiver of removal to a person who "is the . . . son[ ] or daughter of a citizen of the United States." 8 U.S.C. § 1227(a)(1)(H)(i)(I). The Board of Immigration Appeals concluded petitioner Evens Julmice is categorically ineligible under that provision because his U.S. citizen father is no longer living. But the statutory text includes no living-parent requirement, so we grant the petition for review, vacate the Board's decision, and remand for the agency to determine whether, as a matter of discretion, Julmice should receive a waiver.

I.

Congress allocates a certain number of immigrant visas per year for "the unmarried sons or daughters of citizens of the United States." 8 U.S.C. § 1153(a)(1). Julmice applied for and received one of those visas while his U.S. citizen father was still living. But Julmice was ineligible for such a visa because he had been married for five years when he applied for it. And misrepresenting his marital status, in turn, rendered Julmice removable from the United States. See §§ 1182(a)(6)(C)(i), 1227(a)(1)(A).

The Attorney General, however, has discretion to waive removal "for any alien . . . who . . . is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1227(a)(1)(H)(i)(I). Julmice requested such a waiver, but an immigration judge concluded he was ineligible for one. Noting that Julmice's father was deceased, the immigration judge followed *Matter of Federiso*, 24 I. & N. Dec. 661, 664 (B.I.A. 2008), a

precedential Board decision concluding that a deceased parent is not a qualifying relative for waiver eligibility.

Julmice appealed to the Board, noting that the Ninth Circuit had already rejected *Federiso*'s living-parent requirement as contrary to the statutory text. See *Federiso v. Holder*, 605 F.3d 695 (9th Cir. 2010). Without engaging with the Ninth Circuit's reasoning, the Board declined to revisit *Federiso* and adopted and affirmed the immigration judge's decision holding Julmice ineligible.

## II.

This case raises a discrete question of statutory interpretation: To be eligible for a Section 1227(a)(1)(H)(i) waiver, must a person be the son or daughter of a *currently living* U.S. citizen or lawful permanent resident? The Board answered yes, and we review that determination using the familiar *Chevron* framework. See *Immigration & Naturalization Serv. v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (holding that the Board's construction of the statutes it administers warrants *Chevron* deference). We first use "traditional tools of statutory construction" to determine "whether Congress has directly spoken to the precise question at issue." *Prudencio v. Holder*, 669 F.3d 472, 480 (4th Cir. 2012) (citation omitted). If—and only if—our interpretive toolkit leaves us with a genuine ambiguity do we reach the second question, which asks whether the agency's considered views about the meaning of the statute are "reasonable." *Id.*

Here, our analysis ends at step one. The relevant statutory text says the Attorney General "may" waive removal "for any alien . . . who . . . is the spouse, parent, son, or daughter of a citizen of the United States." 8 U.S.C. § 1227(a)(1)(H)(i)(I). The subject of

3

the sentence is the "alien" seeking the waiver, and the relevant verb ("is") appears in the present tense. In contrast, there is no present-tense verb (or any verb at all) applicable to the citizen parent. Hearing the sentence "Olivia is the child of a U.S. citizen," a listener might safely assume that Olivia is currently alive but has no syntax-based reason to assume the referenced parent remains living (as one might if the sentence read "Olivia is the child of a parent who *is* a U.S. citizen"). Simply put, "an ordinary speaker of English would say that" a still-living child remains *the child of* a deceased parent. *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1015 (2020); accord *Federiso*, 605 F.3d at 698 ("A child never ceases to be his mother's son. He always *is* her son, even after her death.").

The Board never explained how its contrary view is consistent with (much less mandated by) the statutory text. On appeal, the government relies primarily on a purported statutory "silence," noting that the relevant provision does not specify whether the parent must be living or dead. U.S. Br. 16.

Without question, *Chevron* deference applies to certain statutory silences, such as when Congress enacts a broadly worded rule without specifying how that rule must be implemented in particular situations. See, *e.g.*, *Environmental Prot. Agency v. EME Homer City Generation, L.P.*, 572 U.S. 489, 513–15 (2014). "Silence, however, does not . . . automatically mean that a court can proceed to *Chevron* step two," *Arangure v. Whitaker*, 911 F.3d 333, 338 (6th Cir. 2018), because "sometimes statutory silence" merely reflects "limit[s]" on "agency discretion," *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 223 (2009). For example, "'[t]hou shall not kill' is a mandate neither silent nor

4

ambiguous about whether murder is permissible if committed after 5:00 p.m.," even though it is "silent" about what time the deed is done. *AFL-CIO v. Federal Election Comm'n*, 333 F.3d 168, 181 (D.C. Cir. 2003) (Henderson, J., concurring in the judgment). So too here: Saying the statute is "silent" about whether the parent must currently be alive is just another way of saying Congress chose not to include such a requirement, and the government cannot invoke that silence "to impose unilaterally novel substantive requirements beyond those" Congress enacted. *Federiso*, 605 F.3d at 698.

The government also asserts that the statute's use of the present tense "is" connotes an ongoing parent-child relationship. That may well be true when it comes to Section 1227(a)(1)(H)(i)'s use of the word "spouse"—a relationship that certainly terminates on divorce and is normally understood to terminate on death as well. (After all, a widowed person may remarry without violating anti-bigamy laws.) But, in ordinary English, we continue to refer to someone as the "son of" or "daughter of" their parent in the present tense even long after the parent has died.

The government's efforts to conjure a counterexample simply confirm the point because all involve changing Congress's chosen language in some material way. Most invert the syntax so that the deceased parent (not the still-living child) is the subject. See, *e.g.*, U.S. Br. 17 (wondering whether a man could "describe his [deceased] mother in the present tense five years later"). Another changes both the noun (from "any alien" to "a child") and the verb (from "is" to "describes") while adding a preposition ("with") that

5

appears nowhere in the statute. See *id.* ("a child whose parents are deceased describes himself as an orphan, not as a child with two parents").[1]

True, a different provision of the same title of the U.S. Code refers to someone who "is the parent of a citizen of the United States or was a parent of a citizen of the United States who, within the past 2 years, lost or renounced citizenship status related to an incident of domestic violence or died." 8 U.S.C. § 1154(a)(1)(A)(vii)(I). Read in isolation, that provision might suggest Congress sometimes views a parent's relationship with their child (though not necessarily a child's relationship with their parent) as terminating at the child's death. But, even then, the implication is not so clear because that statute references both the parent of a deceased citizen child *and* the parent of "a citizen of the United States who . . . lost or renounced citizenship status." *Id.* In other words, Congress may well have chosen to use "was" in that statute to include parents of certain people who once had—but later lost—U.S. citizenship. See *infra* note 2. And regardless of how that statute is properly interpreted (a point we do not decide), any comparison of Section 1227(a)(1)(H)(i) with the quite different language of a far removed sub-sub-subparagraph of the same general Act "do[es] not create the kind of 'stark contrast' that might counsel adoption of a meaning other than the most natural one." *Babcock v. Kijakazi*, 142 S. Ct. 641, 646 (2022).

One also might argue that—even if Julmice is still the child of his deceased father—he is no longer the child of "a citizen of the United States" because his father (the argument

---

[1] The government also notes parental rights may be legally terminated before death. This case does not require us to decide whether a person might be eligible for a waiver based solely on a biological—as opposed to a legal—relationship with a U.S. citizen parent, so we do not reach that question.

6

would go) is no longer a U.S. citizen following the father's death. But the Board did not rely on that theory in *Federiso* and the government affirmatively disclaimed it at oral argument. Oral Arg. 19:25–20:17. For that reason, it is at minimum unclear whether any such argument is properly before us. Compare *Amaya v. Rosen*, 986 F.3d 424, 430 (4th Cir. 2021) (noting that this Court has "suggested that standards of review cannot be waived and that *Chevron* deference is such a standard of review"), with *Jimenez-Rodriguez v. Garland*, 996 F.3d 190, 194 (4th Cir. 2021) (declining to consider whether a Board decision could be sustained under a statutory provision the agency had never relied on), and *Ortez-Cruz v. Barr*, 951 F.3d 190, 197 n.5 (4th Cir. 2020) (declining to consider an issue the government "confirmed that it ha[d] abandoned" at oral argument).

Regardless, any such argument would fail as well. For one thing, it founders on the same grammatical shoals as the government's view of the parent-child relationship. The statute asks whether *Julmice* "is" the son of a U.S. citizen, not whether his *father* is still a U.S. citizen following the father's death.

The broader statutory context does nothing to undermine this interpretation; rather, it tends to confirm it. Most notably, other provisions of the Immigration and Nationality Act repeatedly refer to "citizens" in situations where context makes clear the citizen in question may—or even in one instance, must—be deceased. See 8 U.S.C. § 1430(d) (authorizing the naturalization of "[a]ny person who is the surviving spouse, child, or parent of a United States citizen, whose citizen spouse, parent, or child dies during a period of honorable service in an active duty status in the Armed Forces of the United States"); §§ 1403–1405 (granting retroactive citizenship to people born in Alaska, Hawaii, and the

7

Canal Zone without regard to whether they were still living decades later); see also §§ 1401(c), 1101(c)(2) (granting citizenship at birth to children born to "parents both of whom are citizens of the United States" while specifically defining "parent" to include "a deceased parent" in some circumstances). And although numerous provisions involve "citizens" performing acts only possible while alive—such as filing certain petitions, see, e.g., § 1154(a)(1)(A)(i)—nothing in the Act suggests it is linguistically odd to refer to a still-living person as the *child of* a deceased U.S. citizen.[2]

*    *    *

The government insists that treating Julmice as an eligible "son" is incompatible with "the purpose for enacting the fraud waiver," which (it thinks) "exists in large part to keep the families of United States citizens together." U.S. Br. 14–16; accord *Federiso*, 24 I. & N. Dec. at 664 (similar). But "no amount of policy-talk can overcome . . . plain statutory" text. *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021). The question here is not whether Julmice should be granted a waiver as a matter of executive discretion—it is whether Congress has forbidden one via legislative command. Because the answer is no, we grant the petition for review, vacate the Board's decision, and remand for further proceedings.

*SO ORDERED*

---

[2] In contrast, it may well be odd to refer to someone as "the child of a United States citizen" in situations where the parent has renounced or been stripped of their U.S. citizenship. That question, however, is unrelated to—and arises regardless of whether—the parent in question is currently living. This case does not require us to address that situation and we therefore do not.