**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-4206**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LAWRENCE JOSEPH FLORENTINE, a/k/a Larry,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Donald C. Coggins, Jr., District Judge.  (6:22-cr-01012-DCC-1)

Argued:  December 12, 2024                              Decided:  August 7, 2025

Before AGEE, THACKER, and BERNER, Circuit Judges.

Reversed and remanded by published opinion.  Judge Berner wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED:**  Joshua Snow Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant.  Leesa Washington, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.  **ON BRIEF:**  Adair F. Burroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

BERNER, Circuit Judge:

During an interstate road trip, Lawrence Florentine shot and killed his wife, Nicole Zahnd Florentine. Florentine then attempted to conceal his crime by driving Nicole's corpse to a cemetery and setting it aflame. The Government charged Florentine with four counts, including the crime of interstate domestic violence—a felony established by Congress as part of the historic Violence Against Women Act of 1994.

Florentine was also charged with the crime of using fire to commit a felony. In bringing this charge, the Government asserted that Florentine used fire to commit the felony of interstate domestic violence. Florentine moved to dismiss the use-of-fire charge, arguing that because he burned Nicole's corpse only after she was dead, he was no longer engaged in the felony of interstate domestic violence at the time he used fire.

The district court rejected Florentine's argument. It held that interstate domestic violence is a continuing offense, and that the offense had not been completed at the time Florentine used fire. Consequently, the district court denied Florentine's motion to dismiss and sentenced him to 360 months' imprisonment.

We conclude that the district court erred in denying Florentine's motion to dismiss the use-of-fire charge. The crime of interstate domestic violence ends when a victim dies. Because conduct undertaken to conceal a victim's death after the fact lies beyond the reach of the interstate domestic violence statute, Florentine did not use fire to commit the felony of interstate domestic violence.

Though we hold that the district erred in denying Florentine's motion to dismiss, we conclude that full resentencing is unnecessary. The district court repeatedly explained that

2

it would have imposed the same 360-month sentence even if it had granted Florentine's motion to dismiss and thoroughly articulated why such a sentence was reasonable regardless of whether the use-of-fire charge applied. Because resentencing would serve no purpose under these circumstances, we remand solely for the entry of an amended judgment.

## I.      Background

Lawrence Florentine murdered his wife Nicole during an interstate road trip that began in North Carolina. After killing Nicole, Florentine attempted to conceal his crime by dousing her body with gasoline, setting it aflame, and then burying her remains in a shallow grave. Though the precise time and place of Nicole's death is unknown, motel records and cellphone data show that Florentine and Nicole travelled through North Carolina and South Carolina between June 3, 2020, and June 9, 2020. Beginning on June 10, however, Nicole's family members lost all contact with her.

Surveillance footage from June 11 shows Florentine buying a gasoline can and a shovel near a Kentucky cemetery. On June 13, a groundskeeper at that cemetery called the police to report a suspicious gravesite. Police found a gasoline can near a makeshift grave and uncovered the charred remains of a body that was eventually identified as Nicole's. An autopsy later revealed that Nicole was killed by a bullet wound to the head.

The Government charged Florentine with four felony counts: interstate domestic violence resulting in death, in violation of 18 U.S.C. §§ 2261(a)(2), (b)(1) (Count 1); use of a firearm during a crime of violence to cause death, in violation of 18 U.S.C. §§ 924(c),

3

(j) (Count 2); obstruction of justice, in violation of 18 U.S.C. § 1519 (Count 3); and use of fire to commit a felony—here, interstate domestic violence—in violation of 18 U.S.C. §§ 844(a)(1), (h)(1) (Count 4). This appeal concerns only Count 4, use of fire to commit a felony.

Florentine moved to dismiss Count 4 for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B). Though the precise time and place of Nicole's death are unknown, it is undisputed that Nicole was already dead when Florentine burned her corpse. Florentine argued that because he did not "use[ ] fire" until after Nicole died, he did not "use" fire to commit the crime of interstate domestic violence. According to Florentine, for Count 4 to apply, fire must have been actively employed to commit the felony. Florentine asserted that there was no precedent supporting a Section 844(h)(1) charge for using fire *after* a crime had been completed, and that efforts to conceal a crime are not part of the crime itself.

Florentine entered into a plea agreement before the district court could rule on his motion to dismiss. The plea agreement's appellate waiver contained an exception, however, that allowed Florentine to appeal an unfavorable ruling on Count 4:

> Pursuant to the terms of this plea agreement, [Florentine] expressly retains the right to appeal any adverse ruling from the Court on his motion to dismiss Count 4 of the Indictment (ECF No. 91). [Florentine's] plea of guilty is conditioned on his right to appeal that decision.

J.A. 29.

The ensuing procedural history is unusual. Shortly after Florentine entered into the plea agreement, the district court denied Florentine's motion to dismiss without addressing

4

the merits of his underlying statutory argument concerning Count 4. The court declined to consider whether the term "uses fire" in Section 844(h)(1) encompassed Florentine's conduct because it found that "the parties disagreed as to significant facts." J.A. 171. Specifically, at the time of the district court's ruling, the Government had yet to concede that Nicole was already dead when Florentine used fire to burn her body.

Florentine filed a motion to reconsider. He argued that "[t]he date of Nicole's killing and the cause of that killing are clear in the Government's indictment; she was shot on June 9, 2020. . . . Count 4 alleges fire was used on June 11, 2020." J.A. 174. The district court denied the motion to reconsider.

Florentine then moved to withdraw his guilty plea. He asserted that the procedural posture of the case would likely prevent an appellate court from ever reaching the merits of his argument concerning the scope of Section 844(h)(1), and that his right to argue this statutory issue was a critical condition of his guilty plea.

During the hearing on Florentine's motion to withdraw his guilty plea, the Government reversed course and conceded that Nicole was dead before Florentine set her body aflame. After this concession, the district court determined that it could resolve the statutory argument presented in Florentine's initial motion to dismiss. Because the district court agreed to reconsider Florentine's motion to dismiss Count 4 and to issue a ruling on the merits, Florentine withdrew his motion to withdraw his guilty plea.

In ruling on the merits of Florentine's motion to dismiss, the district court again sided with the Government and denied the motion. The district court concluded that the crime of interstate domestic violence resulting in death, 18 U.S.C. §§ 2261(a)(2), (b)(1), is

5

a continuing offense that is not necessarily completed at the time of the victim's death. The court determined that "the offense is a continuum. . . . And with respect to this continuum, the use of fire within one day or two days of the shooting and killing of the defendant is still a use, in connection with, sufficient to support [Count 4]." J.A. 249–50.

The court sentenced Florentine to 360 months' imprisonment: 240 months for Counts 1, 2 and 3, to be served concurrently, and 120 months for Count 4, to be served consecutively to all other counts. The 240-month sentence for Counts 1 through 3 was within the Sentencing Guidelines advisory range. The 120-month sentence for Count 4 was mandatory.

At the sentencing hearing, the district court stated expressly that it would have imposed the same sentence even if it had dismissed Count 4. The district court recognized that doing so would have required an upward variance from the Guidelines range of 210 to 263 months' imprisonment for Counts 1, 2, and 3. The district court explained: "To the extent that such a sentence . . . would require an upward variance, the government's motion [for an upward variance] is granted." J.A. 321–22.

In this appeal, Florentine challenges the district court's denial of his motion to dismiss Count 4, the Section 844(h)(1) charge. He argues that if we agree with his interpretation of the relevant statutes, we must vacate his sentence and remand for resentencing. Though the district court stated that it would have imposed the same sentence even if it had dismissed Count 4, Florentine contends that the court failed to provide an adequate explanation for the large upward variance that would have been necessary to sentence him to 360 months' imprisonment solely on the basis of Counts 1, 2, and 3.

6

## II.    Standard of Review

Florentine challenges the district court's interpretation of Section 844(h)(1) and Section 2261(a)(2). We review matters of statutory interpretation *de novo*. *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020).

## III.    Analysis

The statutory issue in this appeal turns on a single question: does the felony offense of interstate domestic violence, 18 U.S.C. § 2261(a)(2), end at the moment the victim dies? If we hold that it does, we must conclude that Florentine did not violate Section 844(h)(1), which applies to one who "uses fire . . . to commit any felony." 18 U.S.C. § 844(h)(1). The predicate felony for Count 4 is interstate domestic violence, as encompassed by Section 2261(a)(2). The Government concedes that Florentine did not "use fire" until after Nicole died. Florentine concedes that he did "use fire" to conceal her death. The sole statutory issue is whether the concealment of a victim's death may be properly considered part of the crime of interstate domestic violence under Section 2261(a)(2).

### a.   Section 844(h)(1) is Inapplicable to Florentine's Conduct

Section 844(h)(1) requires that fire be used in the commission of a felony. The fire need not have caused the physical harm penalized by that felony, however. Courts have adopted expansive readings of the statutory phrase "uses fire" in Section 844(h)(1), affirming convictions where fire was used as a diversionary tactic during the underlying felony offense, or to set the offense in motion. *See, e.g., United States v. Desposito*,

7

704 F.3d 221, 227–29 (2d Cir. 2013) (holding that the use of fire to divert police attention from the commission of a bank robbery qualified as a Section 844(h)(1) offense); *United States v. McAuliffe*, 490 F.3d 526, 534–35 (6th Cir. 2007) (collecting cases).

Regardless of the expansive scope of the phrase "uses fire," the critical statutory issue in this appeal is determining when the commission of the predicate felony, interstate domestic violence (as defined by 18 U.S.C. § 2261), came to an end. The crime of interstate domestic violence does not necessarily end after a perpetrator has ceased physical violence against his victim. This court has established that Section 2261(a)(2) encompasses certain conduct carried out even days after physical abuse has ended. In *United States v. Helem*, 186 F.3d 449 (4th Cir. 1999), this court analyzed an earlier version of Section 2261(a)(2) that made it unlawful to cause a spouse or intimate partner to cross a state line "by force, coercion, duress, or fraud and, *in the course or as a result of that conduct*," intentionally commit a crime of violence and thereby cause bodily injury. 18 U.S.C. § 2261(a)(2) (1997) (emphasis added). The defendant in *Helem* violently beat his wife at their apartment in Maryland. *Id.* at 451–52. He then told his wife that they needed to leave town so no one would see her condition, and he asked her if she wanted to drive south. *Id.* at 452. Helem's wife responded "I don't care" out of fear that he would resume beating her if she responded differently. *Id.* Although Helem did not commit any acts of physical violence during their travel, which ended with his arrest in North Carolina, a jury convicted Helem of interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(2). *Id.*

On appeal before this court, Helem argued that Section 2261(a)(2) did not reach intrastate acts of violence that end before interstate travel begins. This court rejected

8

Helem's theory of Section 2261(a)(2) and instead adopted an expansive reading of the statutory phrase "in the course of" interstate travel. 186 F.3d at 454–55 ("[P]hysical violence that occurs before interstate travel begins can satisfy the 'in the course or as a result of that conduct' requirement of 18 U.S.C. § 2261(a)(2).") *Helem* thus made clear that the offense of interstate domestic violence may continue after the acts of physical violence end.

After this court decided *Helem*, a subsequent amendment confirmed this court's reading of Section 2261(a)(2). Congress amended Section 2261(a)(2) to apply to anyone who: 1) "causes a spouse, intimate partner, or dating partner to travel in interstate commerce . . . by force, coercion, duress, or fraud" and 2) "commits or attempts to commit a crime of violence against that spouse" either "in the course of, as a result of, *or to facilitate* such . . . travel." Pub. L. 106-386 § 1107(a)(2), 114 Stat. 1464, 1497 (2000) (emphasis added).

Though *Helem* clarified that Section 2261(a)(2) can encompass certain interstate travel occurring after an abuser ceases physical violence, it did not suggest that the statute applies to conduct that occurs after a victim has been killed. This court's precedent provides no indication that a Section 2261(a)(2) offense may continue after a victim dies. Such an interpretation is also unsupported by the statutory text.

The Government's position that the crime of interstate domestic violence can continue beyond the victim's death would require us to accept one of two potential readings of the statute. First, if we determined that "caus[ing] a spouse . . . to travel in interstate

9

commerce" included transporting the corpse of a deceased former spouse, Count 4 would apply to Florentine's conduct.

This reading would be contrary to the statute's plain meaning. The Government asserts that "by its nature, the domestic violence crime is triggered by the involuntary interstate transportation of the victim; it logically cannot be complete as long as that conduct continues." Gov't Response Br. at 17. The statute, however, does not cover transportation writ large. It specifically prohibits "caus[ing] a spouse [or partner] . . . to travel in interstate commerce." 18 U.S.C. § 2261(a)(2). Once a person has died, they are no longer anyone's "spouse" or "partner." *See Julmice v. Garland*, 29 F.4th 206, 208 (4th Cir. 2022) (explaining that the title "spouse," in the context of a statue, is "normally understood to terminate on death"); *Ablamis v. Roper*, 937 F.2d 1450, 1456 (9th Cir. 1991) ("Ms. Albamis's death divests her of the title of 'spouse or other dependent.'"). The interstate transport of a corpse, therefore, necessarily falls outside the scope of Section 2261(a)(2).

Alternatively, Count 4 would apply to Florentine if we concluded that the concealment of a Section 2261(a)(2) crime is part of the offense itself. According to the Government, Florentine's burning of Nicole's corpse was integral to his attempts to conceal her murder and to evade detection. The Government argues that the offense of interstate domestic violence, as defined by Section 2261(a)(2), encompasses acts of concealment done to evade law enforcement detection and avoid criminal responsibility for domestic violence. *Id.* at 24.

Even a continuing offense reaches an endpoint, however. Concealment generally falls beyond that endpoint, and Section 2261(a)(2) is no exception. The prototypical continuing offense is conspiracy. *Toussie v. United States*, 397 U.S. 112, 122 (1970). Yet an implicit agreement to conceal a conspiracy is not part of a conspiracy offense. *See Grunewald v. United States*, 353 U.S. 391 (1957). In *Grunewald*, the Supreme Court noted that "every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces." *Id.* at 402. The Court drew a "vital distinction," however, "between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* at 405.

The prosecution in *Grunewald* sought to analogize the defendants' efforts to conceal their conspiracy to a hypothetical kidnapper's hiding while waiting for ransom. *Id.* It argued that each was a form of concealment integral to the offense itself. *Id.* The Court rejected that analogy, explaining that kidnapping was among the narrow category of offenses where "the successful accomplishment of the crime necessitates concealment." *Id.* Unless an offense falls into that limited category, "acts of covering up can by themselves indicate nothing more than that the conspirators do not wish to be apprehended." *Id.* at 405–06.

Here, the Government similarly attempts to analogize the charged offense to kidnapping. It argues that the offense of kidnapping resulting in death is not necessarily complete once the victim is dead, and that interstate domestic violence, like kidnapping, is a continuing offense. For support, the Government cites the Second Circuit's decision in

11

*United States v. Zayac*, 765 F.3d 112 (2d Cir. 2014). Though the court in *Zayac* declined to decide precisely when the kidnapping resulting in death ended, it determined that the earliest the offense could have been completed was the moment when the defendant abandoned the body. *Id.* at 122.

Yet comparing the interstate domestic violence statute to the federal kidnapping statute undermines the Government's argument rather than bolstering it. The federal kidnapping statute, 18 U.S.C. § 1201(a)(1), provides that kidnapping occurs "when the person is . . . transported in interstate or foreign commerce, *regardless of whether the person was alive* when transported across a State boundary." Section 2261(a)(2) contains no such language. *See* 18 U.S.C. § 2261(a)(2). The lack of a similar clause in the interstate domestic violence statute is evidence that Congress did not intend for the offense to extend past the death of a victim.

Apart from its misplaced reliance on *Zayac* and the federal kidnapping statute, the Government offers no support for its theory that Section 2261(a)(2) is an exception to the rule that acts of concealment are not part of the crime and "indicate nothing more than that the [offenders] do not wish to be apprehended." *Grunewald*, 353 U.S. at 406. The successful accomplishment of interstate domestic violence resulting in death does not "necessitate[] concealment." *Id.* at 405. Accordingly, Florentine's attempt to conceal his crime was not part of the offense itself. The crime of interstate domestic violence, as defined by 18 U.S.C. § 2261(a)(2), ends when the victim dies. Because conduct undertaken to conceal the victim's death is beyond the reach of the statute, the district court erred in denying Florentine's motion to dismiss Count 4.

12

b.  Resentencing is Unnecessary

Though we hold that the district court erred in denying Florentine's motion to dismiss Count 4, we agree with the Government that resentencing is not necessary. The district court made it abundantly clear that it would have imposed the same total sentence even if it had erred in denying Florentine's motion to dismiss Count 4.

At sentencing, the district court explained thoroughly—over eight pages in the hearing transcript—why a 360-month sentence was appropriate regardless of the applicability of Section 844(h)(1). The district court summarized its reasoning:

> I will also state that even had I ruled in the defense['s] favor with respect to the legal application of Count 4 and its 120-month consecutive sentence, even if that count had been dismissed and I had simply treated that as relevant conduct, I would have imposed this same sentence as an alternate variance sentence in light of all of the facts and circumstances in this case . . . . To the extent that such a sentence in the absence of that 120 months consecutive [sentence] would require an upward variance, the government's motion is granted for the reasons the Court has previously stated.

J.A. 321.

As this court explained in *United States v. Savillon-Matute*, "it would make no sense to set aside [a] reasonable sentence and send the case back to the district court [when] it has already told [this court] that it would impose exactly the same sentence, a sentence [this court] would be compelled to affirm." 636 F.3d 119, 123 (4th Cir. 2011). Here, we would be similarly compelled to affirm a sentence of 360 months' imprisonment on Counts 1, 2, and 3 because the district court provided a fulsome explanation of each factor that it was required to consider in sentencing, as outlined by 18 U.S.C. § 3553(a). *Id.* Though a 360-month sentence for those three counts would represent a substantial upward variance

13

from the Guidelines range of 210 to 262 months, appellate courts may not "apply a presumption of unreasonableness" to above-Guidelines sentences. *Gall v. United States*, 552 U.S. 38, 51 (2007). A substantial upward variance from the Guidelines range must, however, be supported by a thorough explanation of the 3553(a) sentencing factors. *See United States v. Howard*, 773 F.3d 519, 528–30 (4th Cir. 2014).

The district court carefully considered the facts of this case in analyzing each of the 3553(a) factors, ultimately explaining: "I think based upon those aggravating facts under the 3553(a) factors an upward variance is supported." J.A. 316. To be clear, a district court cannot insulate a sentence from vacatur through a general statement that it would have imposed same sentence regardless of any error. Here, however, the district court's sentence was reasonable, despite the court's error, in light of its thorough analysis of the 3553(a) factors.

## IV.    Conclusion

Though we conclude that the district court erred in ruling that Florentine used fire to commit the crime of interstate domestic violence resulting in death, we remand for the limited purpose of entering an amended judgment.

*REVERSED AND REMANDED*

14